## Centre Square Fire Co. v. Whitpain Township

*Parke H. Ulrich,* for petitioner.

*Samuel L. Sagendorph,* of *Wright, Mauck & Spencer,* for respondent.

GROSHENS, J., December 23, 1959.—The facts in the present case are not in dispute. Petitioner, a volunteer fire company, is a nonprofit corporation. Respondent township is a second class township.

Pursuant to the second Class Township Code of May 1, 1933, P. L. 103, as amended, 53 PS §65905, the township, with the approval of the electors, has enacted a one-mill tax on the assessed value of the real estate for the purpose of maintenance of the fire equipment and apparatus and other fire purposes of petitioner.

This tax produced a sum in excess of $9,000, and on September 9, 1959, the fire company requested of the township the sum of $9,000 out of this fund to provide, inter alia, for payment of the following: Maintenance of building, electric, telephone, premium on treasurer's bond, heat, stationery, public liability and property damage insurances, and fire insurance on the building and contents. The township, on the advice of its solicitor, refused the request on the ground that use of the fund for payment of the above enumerated expenses would be contrary to the Second Township Code.

The only issue before this court is whether the use of the fund for such expenditures is contrary to the Second Class Township Code.

Section 905 of article IX of the Second Class Township Code of May 1, 1933, supra, provides as follows:

"4. A tax, not exceeding two mills, and not exceeding the amounts hereinafter limited, for the purpose of purchasing and maintaining fire apparatus and to provide, with the assent of the electors of the township as hereinafter provided, a suitable place for the housing of the same, and to make appropriations to fire companies for the purchase and maintenance of fire apparatus; but no new fire apparatus shall be thereafter purchased by the township, or by any fire company from appropriations made by the township, without the consent of the electors as hereinafter provided."

The legislation in question relates to a municipal function which is performed by volunteers. The extinguishment of fires, and the protection of life and property from the ravages of fire, are of great importance to the public. Legislation designed to promote the effectiveness of community fire fighting should be liberally construed.

Section 33, art. III, of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §533, provides that: "Words and phrases shall be construed according to their common and approved usage . . ." Among the definitions of the verb "maintain" contained in Webster's New International Dictionary, vol. III, p. 1484, are:

"4. To hold or keep in any particular state or condition, especially in a state of efficiency or validity; to support, sustain, or uphold; . . .

"7. To bear the expense of; to support, as to maintain a family."

The words "maintaining" and "maintenance" as used in section 905, supra, have a broader connotation than mere repairing, refurbishing, lubricating or any of the many other things which may be necessary to do physically to machinery to keep it in good running order.

We now consider the specific items of expense questioned by the township.

"Maintenance of building".—This item clearly falls within the purview of the statute. Modern fire apparatus are costly and intricate machines. In this latitude they cannot be suitably maintained in good operating order except in a building. The depreciation which would result from year-round exposure to the elements and variations in temperature make a building of some sort almost indispensable for the proper maintenance of fire apparatus.

"Electric".—An unlighted firehouse would be impractical. The siren which spreads the alarm of a

fire to summon the volunteers must be operated by electricity. The charging of the batteries used in the fire trucks requires electricity on the premises. Many other electrical devices may be useful, if not necessary, in a modern firehouse.

"Telephone".—Fire apparatus is of little use to the community if the residents thereof do not have a swift modern method of sending for help when an emergency arises. When the electors of a township approve a fire tax for maintaining fire apparatus, they must be taken to have intended a suitable method to call the fire company for help. Furthermore, if repairs or parts are needed for fire apparatus, time may be of the essence, and the telephone is recognized as a great time saver. A mechanic, or the needed parts, may be speedily summoned by a telephone call from the firehouse.

"Heating".—The expense of heating the firehouse is necessarily within the purview of the statute also, for it is essential that fire trucks be in condition to be started quickly in zero weather when an emergency arises, and that they be protected from damage caused by condensation and rust. This protection can only be afforded by keeping the equipment in a heated building.

"Public liability and property damage insurance". —The township is made liable by statute for the negligence of a member of a volunteer fire company while driving fire apparatus to a fire. It is essential therefore that liability and property damage insurance be secured to protect the taxpayers against such a liability. Ordinary prudence dictates the precaution of insurance. No responsible person would consider maintaining and operating fire apparatus without proper protection to the other users of the highways and to the taxpayers of the township as well. In a realistic modern sense, maintaining fire apparatus means,

among other things, maintaining adequate insurance coverage.

"Fire insurance on the buildings and contents".— We have already pointed out the reasons which call for a building to maintain fire apparatus. If a fire destroyed the building, another must be built to take its place. Likewise, if the apparatus is destroyed, it must be replaced if protection for the public is to continue. Destructible public property should be insured against fire loss. Common sense and good husbandry require no less, and, in our opinion, fire insurance expenditures fall within the purview of the statute under consideration.

"Premium on treasurer's bond".—The fire company is bound to take reasonable steps to protect the public funds entrusted to it. The treasurer handles the taxpayers' funds for the fire company. While this item is not connected with the fire apparatus per se, it is within the definition of "maintain" set forth, for, if the funds are lost, they cannot be used for maintenance. The statutory authority to handle public funds carries with it the implied duty to expend part of the funds to protect the public interest in the funds.

"Stationery".—The stationery expense is too remote and too casual in its relationship to the maintenance of fire apparatus to be embraced within the scope of the statute. The connection, if any does exist, is tenuous and hence does not justify payment out of the tax funds.

### Decree

And now, December 23, 1959, it is ordered, adjudged and decreed that the payment of expenses for maintenance of the building, electric, telephone, premium on treasurer's bond, heat, public liability and property damage insurance and fire insurance on the building and contents from the special fire tax fund is proper and is not contrary to law.